UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DIANN M. BENNETT, | ) |
| Plaintiff, | ) ) |
| v. | ) NO. 2:14-cv-00086 ) Senior Judge Wiseman |
| NANCY BERRYHILL, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OF OPINION

Pending before the Court is Plaintiff Diann M. Bennett's ("Bennett") Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 16), filed with a Memorandum in Support (Doc. No. 17). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Bennett's Motion. (Docket No. 18.) Upon consideration of the parties' filings and the transcript of the administrative record (Doc. No. 10),[1] and for the reasons given below, the Court will **DENY** the Motion.

### I. Introduction

On March 5, 2008 Bennett filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act, alleging a disability onset of September 1, 2005 (the "alleged onset date"). (A.R. 437–42.) Bennett's claim was denied at the initial and reconsideration stages of state agency review. (Id. at 292, 301) Bennett subsequently requested *de novo* review of his case by an Administrative Law Judge ("ALJ"). (Id. at 307.) The ALJ heard the case on August 23, 2010,

---

[1] Referenced hereinafter by page number(s) following the abbreviation "A.R."

1

when Bennett appeared, was represented by an attorney, and gave testimony. (Id. at 219.) Testimony was also received from an impartial vocational expert. (Id.) At the conclusion of the hearing, the matter was taken under advisement until September 7, 2010, when the ALJ issued a written decision finding Bennett not disabled. (Id. at 271.)

On March 1, 2012 the Appeals Council issued an order remanding the case to the ALJ. (Id. at 289.) The Appeal Council ordered a remand to "properly address, weigh, or give specific reasons for omitting the opinions of Ms. Emily Rummel, a non-treating source" and give further consideration to Bennett's RFC "during the entire period at issue and provide rationale with specific references to the evidence of record in support of the assessed limitations." (Id.) The remand order also directed the ALJ to "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base" as required. (Id. at 290.)

A second hearing was held on September 19, 2012 before the same ALJ. (Id. at 193.) On December 14, 2012, the ALJ issued a written decision again denying Bennett's claim. (Id.) That decision contains the following enumerated findings:

1. Bennett meets the insured status requirements of the Social Security Act through December 31, 2009.

2. Bennett has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Bennett has the following severe impairments: degenerative disc disease, osteoarthritis, depression, posttraumatic stress disorder, obesity, and diabetes (20 C.F.R. 404.1520(c) and 416.920(c)).

4. Bennett does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Bennett has the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. 404.1567(b) and 416.967(b) except that she needs to avoid workplace hazards such as unprotected heights and moving machinery, she can occasionally climb

ramps and stairs, crouch, crawl, balance, stoop, or kneel; she cannot climb ladders, ropes, or scaffolds; she is able to stand or walk for two to four hours in an eight-hour workday; she can sit for up to six hours in an eight-hour workday; she can understand, remember, carry out and attend to simple instructions and tasks without supervision; she can maintain personal hygiene, and make simple work decisions; she would work best in a position where she has minimal contact with the public and would respond best to positive supervision; she can recognize and avoid normal workplace hazards and use public transportation.

6. Bennett is unable to perform past relevant work (20 C.F.R. 404.1565 and 416.965).

7. Bennett was born on April 13, 1964 and was 41 years old at the alleged onset date, which is defined as a younger individual aged 18-49 (20 C.F.R. 404.1563 and 416.963).

8. Bennett has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.968).

9. Transferability of job skills is not an issue in this case because Bennett's past relevant work is unskilled (20 C.F.R. 404.1568 and 416.968).

10. Considering Bennett's age, education, work experience, and RFC there are jobs that exists in significant numbers in the national economy that she can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. Bennett has not been under a disability within the meaning of the Social Security Act from the alleged onset date through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Id. at 196–203) Bennett filed a timely appeal with the Appeals Council which upheld the decision on August 8, 2014. (Id. at 188, 190.) This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. Review of Record

The Court adopts the summary of Bennett's medical records from the ALJ's decision. (A.R. 196–201.)

## III. Conclusions of Law

### A. Standard of Review

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than

3

a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636, 641 (6th Cir. 2013) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 473 (6th Cir. 2016 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." Miller, 811 F.3d at 833 (quoting Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014)).

**B. Five-Step Inquiry**

The claimant bears the ultimate burden of establishing entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). The SSA considers a claimant's

case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart B of the Regulations. Claimants with lesser impairments proceed to step four.

4. A claimant who can perform work that he has done in the past will not be found to be disabled.

5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Parks v. Soc. Sec. Admin., 413 F. App'x 856, 862 (6th Cir. 2011) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity[.]" Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 628 (6th Cir. 2016) (quoting Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); Wright v. Massanari, 321 F.3d 611,

615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. Wright, 321 F.3d at 615–16; see Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. Anderson, 406 F. App'x at 35; see Wright, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Glenn v. Comm'r of Soc. Sec., 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

## C. Weighing Medical Source Evidence

The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011). The significant deference accorded to the Commissioner's decision is conditioned on the ALJ's adherence to these governing standards. In Gentry v. Commissioner of Social Security, the Sixth Circuit re-stated the responsibilities of the ALJ in assessing medical evidence in the record in light of the treating source rule:

> Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513. The second is known as the "treating physician rule," see Rogers, 486 F.3d at 242, requiring the ALJ to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

6

> case record." 20 C.F.R. § 404.1527(d)(2) (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012). The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective "cannot be obtained from objective medical findings alone." 20 C.F.R. § 416.927(d)(2) (language moved to 20 C.F.R. § 416.927(c)(2) on March 26, 2012). Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors. Rogers, 486 F.3d at 242. In all cases, the treating physician's opinion is entitled to great deference even if not controlling. Id. The failure to comply with the agency's rules warrants a remand unless it is harmless error. See Wilson, 378 F.3d at 545–46.

741 F.3d 708, 723 (6th Cir. 2014).

The Sixth Circuit has also made clear that an ALJ may not determine the RFC by failing to address portions of the relevant medical record, or by selectively parsing that record—*i.e.*, "cherry-picking" it—to avoid analyzing all the relevant evidence. Id. at 724 (citing Minor v. Comm'r of Soc. Sec., 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); Germany-Johnson v. Comm'r of Soc. Sec., 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports.")). This is particularly so when the evidence ignored is from a treating physician. Ignoring medical evidence from a treating source in fashioning the RFC, without a proper analysis of why such action is taken, cannot be harmless error because it "undermines [the ALJ's] decision" to overlook evidence that could have potentially supported a more restrictive RFC or even a finding of disability. Gentry, 741 F.3d at 729 (citations omitted); Grubbs v. Comm'r of Soc. Sec., No. 12–14621, 2014 WL 1304716, at *2 (E.D. Mich. Mar. 31, 2014) ("The absence of a review of treatment records from a treating source and the lack of analysis of such made it impossible for the ALJ to properly assess whether the

7

Plaintiff was disabled and/or whether Plaintiff had the residual functional capacity to do any work.").

   D. **Bennett's Statement of Errors**

   **1. The ALJ Erred by Rejecting the Opinion of Treating Nurse Practitioner Tory Woodard and Consultative Senior Psychological Examiner Emily Rummel who Described Limitations that Would Preclude Bennett from Performing Substantial Gainful Activity.**

Bennett contends that the ALJ erred by assigning "no weight" to Tory Woodard because "it was based on very little interaction and is not supported by the psychological evidence generated up to that point." (A.R. 201.) Bennett also contends that the ALJ erred by giving "no weight" to Emily Rummel's opinion because it appeared that Bennett was able to interact with Dr. Herman, at her hearing, and in other encounters, there was "no support for the notion that she would miss excessive amounts of work because of psychological issues" and "her primary reason for leaving the workforce was pain in her back and knees and not her emotional problems." (Id.)

As a preliminary matter, neither Woodard—who is a nurse practitioner (id. at 201)—nor Rummel—who is a licensed senior psychological examiner (id. at 987)—are acceptable medical sources. See SSR 06-03p; Hollingsworth v. Astrue, No. 1:09-0031, 2010 WL 2901830, at *3 (M.D. Tenn. July 15, 2010). An ALJ may use evidence from unacceptable medical sources to show the severity of a claimant's impairment and how it affects her ability to function. However, unlike acceptable medical sources, information from unacceptable medical sources cannot establish the existence of a medically determinable impairment, give medical opinions, or be considered treating sources whose medical opinions may be entitled to controlling weight. SSR 06-03p. The factors outlined by SSR 06-3p "can be applied" to unacceptable medical sources and include the duration and frequency of the treating relationship with the claimant, the consistency of the opinion with other evidence, the degree to which the unacceptable medical sources presents

relevant evidence to support her opinion, how well the unacceptable medical sources explains her opinion, whether she has a specialty or area of expertise related to the claimant's impairment, and any other factors that refute or support the opinion." Id. However, "not every factor for weighing opinion evidence will apply in every case" and "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight[.]" Id.

Here, the ALJ gave Woodard's opinion "no weight" due to the fact that it was "based on very little interaction and is not supported by the psychological evidence generated up to that point." (A.R. 201.) Indeed, Woodard's opinion, as cited by Bennett, consists of a Mental Impairment Questionnaire that Woodard filled out on March 9, 2010, after seeing Bennett three times in two months. (Id. at 974.) In the Questionnaire, Woodard indicated that Bennett had "marked" functional limitations in "maintaining social functioning" and "moderate" functional limitations in "activities of daily living . . . concentration, persistence or pace." (Id. at 976.) Woodard noted Bennett's self-reported symptoms (id. at 974, 978), that Bennett's prognosis was "good with psychopharmacology and therapy" (id. at 974), and that she was "unsure at this point" if Bennett's impairments or treatment would case her patient to be absent from work because she had "not treated client long enough" (id. at 977). Therefore, Woodard's opinion, by her own admission, is inconclusive with respect to the effect Bennett's mental health has on her ability to work. (Id.)

Rummel's opinion also consists of the Questionnaire, which she filled out after seeing Bennett once, on August 10, 2010, in connection with this claim. (Id. at 987.) In the Questionnaire, Rummel indicated that Bennett had "marked" functional limitations in "maintaining social functioning" and "moderate" functional limitations in "activities of daily living." (Id. at 989.) Rummel noted Bennett's self-reported symptoms (id. at 987–88, 992–94),

9

that Bennett's prognosis was "guarded" (id. at 987), and that Bennett's impairments or treatment would cause her to be "absent from work more than four days of work a month" (id. at 990). Rummel wrote up the results of a psychological evaluation she performed on Bennet, which included the Thematic Apperception Test. (Id. at 994.) The ALJ cited specific reasons for discounting her opinion that Bennett would miss more than four days of work a month. (Id.)

Although the permissive language of SSR 06-3p does not require the ALJ to apply any particular factors to evaluate an unacceptable medical source's opinion, it appears that the ALJ implicitly applied SSR 06-3p by considering the duration and frequency of Bennett's relationship with Woodard and Rummel and the consistency of their opinions with other evidence. (Id.) In revisiting portions of the record that the ALJ already evaluated, Bennett is effectively "marshalling evidence to suggest" that the record supports an alternative finding. Peterson v. Comm'r Soc. Sec., 552 F. App'x 533, 540 (6th Cir. 2012). However, upon district court review, the question is not whether the ALJ could have reached a different determination based on the evidence on the record, but whether the ALJ's finding "is not supported by substantial evidence." Id.; see also Ulman v. Comm'r Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (holding that, while the ALJ erred in making an observation that error was harmless, as "substantial evidence is the applicable standard of review not perfection"). Given that neither Woodard nor Rummel were acceptable medical sources and the totality of the record, the Court cannot conclude that the ALJ's conclusion is "not supported by substantial evidence." Peterson, 552 F. App'x at 540.

**2. The ALJ Erred in Evaluating Bennett's Subjective Complaints of Pain and Making Conclusory Credibility Findings in Contravention of SSR 96-7p.**

Bennett claims that the ALJ failed to apply 20 C.F.R. 404.1529(c)(3) and SSR 96-7p in evaluating her complaints of pain. (Doc. No. 17, at 21.) Pursuant to 20 C.F.R. 404.1529(c)(3), the ALJ

10

will carefully consider any other information you may submit about your symptoms. The information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms. Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account.

Under SSR 96-7p,

> It is not sufficient for the adjudicator to make a single, conclusory statement that the 'individual's allegations . . . are not credible.' . . . The determination . . . must contain specific reasons for the finding on credibility supported by the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight.

To support her argument, Bennett points to various medical records to demonstrate diagnoses of chronic lower back pain, degenerative joint and disc disease, and associated pain treatment. (Doc. No. 17 at 21–22.) However, the only medical professional cited by Bennett (id. at 22) whose opinion addresses "any symptom-related functional limitations and restrictions" is Dr. Weymouth. 20 C.F.R. 404.1529(c)(3). The RFC actually tracks his findings. (A.R. 918–19.) Moreover, the ALJ specifically alluded to the Bennett's credibility concerning "the intensity, persistence, and limiting effects" of her symptoms and explained her finding with three pages of summarizing Bennett's medical records. (Id. at 199–201.) As with her first statement of error, Bennett's "marshalling evidence to suggest" that the record supports an alternative finding is misplaced because the question is not whether the ALJ could have reached a different determination based on the evidence on the record, but whether the ALJ's finding "is not supported by substantial evidence." Peterson, 552 F. App'x at 540; see also Ulman, 693 F.3d at 713. The

Court finds that the ALJ properly adhered applied 20 C.F.R. 404.1529(c)(3) and SSR 96-7p in evaluating Bennett's complaints of pain and her findings are supported by substantial evidence. Peterson, 552 F. App'x at 540.

## IV. Conclusion

In light of the foregoing, Plaintiff's Motion for Judgment on the Administrative Record will be **DENIED** and the decision of the SSA will be **AFFIRMED**. An appropriate order is filed herewith.

An appropriate order will be entered.

Entered this the 2nd day of May, 2017.

/s/ Thomas A. Wiseman, Jr.
THOMAS A. WISEMAN, JR.
SENIOR DISTRIC JUDGE